UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OMAR WILEY,

           Plaintiff,

    v.

WASHINGTON STATE PATROL, *et al.*,

        Defendants.

CASE NO.  C05-1948RSM

MEMORANDUM ORDER
GRANTING IN PART AND
DENYING IN PART
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on defendants' Motion for Summary Judgment. (Dkt. #59).  Defendants argue that plaintiffs' civil rights claims should be dismissed because Troopers Burgess, McDonald, Manos and Witt did not violate plaintiff's rights under the Fourth Amendment, they are protected by qualified immunity in any event, and there is no legal basis for imposing civil rights liability on the Washington State Patrol because state agencies are not "persons" defined under 42 U.S.C. § 1983.  Defendants further move to dismiss plaintiff's state law claims.

Plaintiff responds that summary judgment is not appropriate in light of conflicting factual accounts of the incident at issue.  (Dkt. #65).  Plaintiff further argues that none of the officers are entitled to qualified immunity because there is a question as to whether the troopers violated his rights.  Plaintiff fails to respond to defendants' argument pertaining to the naming of Washington State Patrol as a defendant or to the arguments pertaining to plaintiff's state law

MEMORANDUM ORDER

PAGE - 1

1  claims.

2      For the reasons set forth below, the Court agrees with plaintiff in part and defendants in

3  part, and therefore GRANTS IN PART and DENIES IN PART defendants' motion for

4  summary judgment.

5                          **II.  DISCUSSION**.

6      **A.  Background**

7      This lawsuit arises from events occurring on November 22, 2003, when Omar Wiley was

8  involved in a traffic stop that eventually resulted in a forceful arrest.  Nearly all of the facts

9  surrounding the stop and the arrest are in dispute.[1]

10     In the early morning of November 22nd, plaintiff was traveling southbound on Interstate

11  5 ("I-5") near SR 516, when he was pulled over by Washington State Trooper Kyle Burgess.

12  Trooper Burgess asserts that he observed Mr. Wiley traveling approximately 80 miles per hour

13  in a 60 mile per hour zone, and that Mr. Wiley was driving erratically.  Mr. Wiley admits that he

14  may have been speeding at some point, but asserts that he was driving safely, that he used his

15  signal at all times, and that he did not make any abrupt lane changes.

16     After plaintiff pulled his vehicle to the side of the road, Trooper Burgess approached the

17  passenger side window.  Plaintiff alleges that Trooper Burgess began banging on the window

18  violently.  Plaintiff then began to roll down the window, and Trooper Burgess yelled, "Hey, roll

19  down your fucking window!"  Plaintiff alleges that he then attempted to hand Trooper Burgess

20  his proof of insurance and vehicle registration, but Trooper Burgess refused to take the

21  documents, continuing to bang on the door and yell at him to open his window.  Plaintiff again

22  offered his insurance and registration, but Trooper Burgess refused to take it and walked away.[2]

23  _____

24     [1] To the extent that there is a difference between the parties' versions of events, the Court views
the facts most favorably to the non-moving party.

25

26     [2] Defendants' version of these events differs significantly.  Defendants assert that when Trooper
Burgess approached the passenger side of the vehicle, he asked plaintiff to roll down the window, but
27  plaintiff did not respond.  Trooper Burgess then asked plaintiff to step out of the vehicle.  Again, plaintiff
did not respond.  Instead plaintiff opened his window approximately one inch and held up his registration.

28

MEMORANDUM ORDER

PAGE - 2

1    At that point plaintiff called his lawyer, Stephen Smith.  He explained what was

2    happening, and Mr. Smith remained on the line with him.  During that time, three more troopers

3    had arrived at the scene.  Trooper Burgess walked to the driver's side of plaintiff's vehicle with

4    Trooper Kyle Witt.  Plaintiff rolled down his window two to three inches.  According to

5    plaintiff, Trooper Burgess then yelled that plaintiff had five seconds to roll down the window or

6    he was going to "fucking break it."  Trooper Witt then began counting backward from five.

7    Plaintiff states that he was attempting to talk to the troopers, but before Trooper Witt reached

8    zero, Trooper Burgess sprayed a can of pepper spray directly into plaintiff's face until it was

9    empty.[3]

10    Plaintiff, in severe pain, then unlocked his door.  Plaintiff alleges that the troopers yanked

11    him from his seat and slammed him to the ground.  His cell phone fell on the ground, and

12    plaintiff heard one of the troopers say, "Oh fuck, he was on the phone with somebody."

13    Another trooper then smashed his foot up against plaintiff's face, and another placed a knee in

14    his back.  Plaintiff states that he was then placed in the back of a patrol car.  He asked if he

15    could wipe off his face.  A few minutes later a trooper opened the door, and asked plaintiff to

16    stick out his head, whereupon the trooper poured water on his head and face.  Shortly

17    thereafter, a fire truck arrived and paramedics administered medical attention to plaintiff.[4]

---

19  Trooper Burgess asked him to roll down the window further, but plaintiff just "flopped" over to the right
20  of his vehicle.  Trooper Burgess asserts that plaintiff was using slow, deliberate movements, and that he
    had bloodshot eyes.  It was at that point that Trooper Burgess asked him to step out of the vehicle.
21  When plaintiff failed to comply, Trooper Burgess radioed for backup.

22    [3] Again, defendants' version of these events differs significantly.  Defendants assert that Trooper
23  Witt approached plaintiff's vehicle and asked him to step out of the vehicle, but plaintiff failed to respond
    and remained in his truck.  Trooper Skeeter Manos then approached the vehicle and ordered plaintiff out
24  multiple times.  Defendants then state that Trooper Burgess warned plaintiff that if he did not get out of
    the vehicle, he was going to use pepper spray.  Trooper Burgess then counted backward from five to one
25  and deployed a can of pepper spray into the vehicle.

26    [4] Defendants state that after plaintiff exited his vehicle, Troopers Manos, Dan McDonald and Witt
27  "controlled" his arms and feet while Trooper Burgess handcuffed him.  The troopers then flushed
    plaintiff's eyes, taking care not to let it drip on his body.  They then called the Kent Fire Department to

28

MEMORANDUM ORDER

PAGE - 3

1    Plaintiff was transported to the King County Jail, where he remained until he was

2    released on bail.  Several months later, plaintiff was prosecuted for driving under the influence

3    ("DUI"), reckless driving and resisting arrest.  During the course of those proceedings, plaintiff

4    challenged whether there had been probable cause for the arrest.  After a lengthy hearing, at

5    which several witnesses testified, the judge ruled that there had been no odor of alcohol at the

6    time of the arrest, and the officers did not have probable cause for the arrest.  As a result, all

7    evidence obtained was suppressed.[5]  The DUI and resisting arrest charges were subsequently

8    dismissed.

9    This lawsuit followed.  In his amended complaint, plaintiff raises several claims for relief

10   pursuant to 42 U.S.C. § 1983.  Specifically, plaintiff alleges that the officer defendants violated

11   his Fourth Amendment rights by detaining, interrogating, searching and arresting him without

12   legal cause, and by using excessive force during his arrest.  Plaintiff further alleges that the

13   defendant officers were motivated by racial bias, and thereby deprived him of equal protection of

14   the law.  Similarly, plaintiff alleges that the defendant officers failed to prevent a civil rights

15   violation.  Finally, plaintiff alleges liability on the part of defendant Washington State Patrol

16   under a respondeat superior theory.  Plaintiff also alleges a number of state law claims,

17   including: (1) false arrest and imprisonment; (2) intentional infliction of emotional distress; (3)

18   negligent hiring and retention; and (4) assault and battery.

19   **B. Summary Judgment Standard**

20   Summary judgment is proper where "the pleadings, depositions, answers to

21   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

22   genuine issue as to any material fact and that the moving party is entitled to judgment as a

23   matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247

24

25   _____

26   care for plaintiff.  Trooper Burgess claims to have smelled alcohol on plaintiff's breath while he sat in the
     back of the patrol car.

27   [5] The Court notes that, apparently, no breathalyzer or other alcohol detection test was ever given

28   to plaintiff.

MEMORANDUM ORDER

PAGE - 4

1    (1986).   The Court must draw all reasonable inferences in favor of the non-moving party.  *See*

2    *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*,

3    512 U.S. 79 (1994).  The moving party has the burden of demonstrating the absence of a

4    genuine issue of material fact for trial.  *See Anderson*, 477 U.S. at 257.  Mere disagreement, or

5    the bald assertion that a genuine issue of material fact exists, no longer precludes the use of

6    summary judgment.  *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics,*

7    *Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987).

8            Genuine factual issues are those for which the evidence is such that "a reasonable jury

9    could return a verdict for the non-moving party."  *Anderson,* 477 U.S. at 248.  Material facts are

10   those which might affect the outcome of the suit under governing law.  *See id.*  In ruling on

11   summary judgment, a court does not weigh evidence to determine the truth of the matter, but

12   "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc*., 41 F.3d

13   547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).  Furthermore,

14   conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat

15   summary judgment.  *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345

16   (9th Cir. 1995).  Similarly, hearsay evidence may not be considered in deciding whether material

17   facts are at issue in summary judgment motions.  *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610

18   F. 2d 665, 667 (9th Cir. 1980).

19

20          **C. Motions to Strike**

21          As an initial matter, the Court first addresses defendants' request to strike certain

22   materials, including a portion of plaintiff's declaration and portions of Exhibits B and C to the

23   Bianchi declaration, which was filed in support of plaintiff's opposition to summary judgment.

24   The Court has reviewed the materials at issue, and finds as follows:

25                  *1. Wiley Declaration*

26          Defendants ask the Court to strike page five, lines 9-10, of plaintiff's declaration as

27   hearsay.  That portion reads, "I immediately filed a complaint with the NAACP who advised me

28

MEMORANDUM ORDER

PAGE - 5

1    not to file a formal complaint out of fear of retaliation while criminal charges are pending."

2    (Dkt. #66 at 5).  Plaintiff does not rely upon that information in any manner in his opposition,

3    nor does the Court rely upon that information in its discussion below.  Accordingly, the Court

4    DENIES defendants' motion to strike as moot.

5                      *2. Exhibits to Bianchi Declaration*

6            Defendants next ask the Court to strike page two, lines 7-10, of Exhibit B to the Bianchi

7    declaration submitted in support of plaintiff's opposition, as well as page 2, lines 7-10 of Exhibit

8    C to the Bianchi declaration, on the basis that these statements constitute improper legal

9    conclusion.  Exhibits B and C are copies of the motions to dismiss filed in plaintiff's underlying

10   criminal case.  Defendants object to portions of the declarations filed in support of those

11   motions, wherein Mr. Bianchi recounts who testified at a prior suppression hearing, and states

12   that the judge found no probable cause for Mr. Wiley's arrest.  Nothing about those statements

13   can be characterized as improper legal conclusion; rather, Mr. Bianchi is setting forth the factual

14   basis for his motions.  (*See* Dkt. #68, Exs. B and C).  Accordingly, the Court DENIES

15   defendants' motion to strike.

16       **D.  Washington State Patrol**

17          The Court next addresses defendants' argument that plaintiff improperly named the

18   Washington State Patrol as a defendant to this action.  Defendants argues that state agencies are

19   not "persons" subject to suit under 42 U.S.C. § 1983.  The Court agrees.  It is well settled that

20   "state agencies which are but arms of the state government are not 'persons' for purposes of the

21   Civil Rights Act." *Allison v. California Adult Authority*, 419 F.2d 822, 823 (9th Cir. 1969).

22   Thus, to the extent that any claims under 42 U.S.C. §1983 have been asserted against the

23   Washington State Patrol, those claims will be DISMISSED.

24          However, defendants have failed to acknowledge that, in the First Amended Complaint

25   filed with this Court, plaintiff has also asserted a negligent hiring and retention claim against the

26   Washington State Patrol.  (Dkt. #29 at 9-10).  Defendants have not addressed that claim, nor

27   have they otherwise moved for summary judgment on that claim.  Accordingly, the Court will

28

MEMORANDUM ORDER

PAGE - 6

1    NOT DISMISS Washington State Patrol as a defendant to this action at this time.

2        **E. § 1983 Civil Rights Violations**

3        The Court now turns to plaintiff's allegations against the individually-named troopers.

4    As noted above, plaintiff alleges that the individual defendants violated his civil rights under 42

5    U.S.C. § 1983 by detaining, interrogating, searching and arresting him without legal cause, and

6    by using excessive force during his arrest.  To prevail on these claims, plaintiff must prove that

7    defendants acted under color of law and deprived plaintiff of a constitutionally-protected rights.

8    42 U.S.C. § 1983; *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998) (citing *Wood*

9    *v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).  To successfully defend against summary

10   judgment, plaintiff must demonstrate that there is a genuine issue of material fact as to whether

11   defendants detained, searched and arrested him without probable cause, or whether reasonable

12   force was used during plaintiff's arrest.  The Court addresses each of these issues in turn.

13            *1. Unlawful Seizure and Probable Cause*

14       Defendants first argue that they had reasonable suspicion to stop plaintiff, and probable

15   cause to arrest him.  As a result, defendants argue, plaintiff is completely barred from bringing

16   any unlawful seizure, false arrest or false imprisonment claims.  The Court is not persuaded.

17   Unlike in many §1983 actions before this Court, here the state court has already determined that

18   there was no probable cause to arrest plaintiff.  Further, plaintiff is correct that defendants are

19   now precluded by the doctrine of collateral estoppel from relitigating that issue.  In Washington,

20   a litigant is estopped from raising an issue in a subsequent proceeding if "(1) the issue decided in

21   the prior adjudication is identical with the one presented in the second action; (2) the prior

22   adjudication must have ended in a final judgment on the merits; (3) the party against whom the

23   plea is asserted was a party or in privity with the party to the prior adjudication; and (4)

24   application of the doctrine does not work an injustice." *Thompson v. Dep't of Licensing*, 138

25   Wn.2d 783, 790 (1999); *Shuman v. Dep't of Licensing*, 108 Wn. App. 673, 677-78 (2001).  If

26   Washington courts, applying these requirements, would preclude defendants from relitigating the

27   issue of probable cause, then they are similarly precluded in this court.  *Haupt v. Dillard*, 17

28

MEMORANDUM ORDER

PAGE - 7

1    F.3d 285, 288 (9th Cir. 1994) (citing *Allen v. McCurry*, 449 U.S. 90, 95 (1980)).

2           Defendants argue only that they are not precluded from raising the probable cause issue

3    because they were not parties to the first action.  Where, as here, defendants were not parties,

4    this Court must determine whether they were in privity with the party to the prior litigation.

5    Privity is established where a person is in actual control of the litigation, or substantially

6    participates in it even though not in actual control.  *Loveridge v. Fred Meyer*, 125 Wn.2d 759,

7    764 (1995); *Kapu v. Lohman*, 2006 Wash. App. LEXIS 17 (Jan. 10, 2006).

8           Plaintiff does not allege that defendants had control over the underlying criminal action,

9    and it is clear that they did not.  However, plaintiff argues that defendant Burgess substantially

10   participated in the litigation as the principle witness at the probable cause hearing, and had the

11   same incentive to prove probable cause as he does in the instant action.  The Court agrees with

12   plaintiff.  *Hackler v. Hackler*, 37 Wn. App. 791, 796 (1984) ("One who was a witness in an

13   action, fully acquainted with its character and object and interested in its results, is estopped by

14   the judgment as fully as if he had been a party.").  Accordingly, as defendants apparently accept

15   that the remaining estoppel elements have been met, the Court finds that defendants are now

16   precluded from relitigating the issue of probable cause, and accepts the state court's

17   determination that no probable cause existed for plaintiff's arrest.[6]  For this reason, the Court

18   DENIES defendants' motion for summary judgment on plaintiff's unlawful seizure claim.

19                          *2. Excessive Force*

20          A Fourth Amendment claim of excessive force is analyzed under the framework outlined

21   by the United States Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989).  In that case,

22   the court instructed that all claims that law enforcement officers have used excessive force in the

23   course of an arrest must be analyzed under the Fourth Amendment and its "reasonableness"

24   _____

25        [6] The Court notes that Troopers McDonald, Manos and Witt do not appear to have been as
     substantially involved in the prior litigation as Trooper Burgess.  However, the Court precludes them
26   from raising a probable cause defense, as precluding only Trooper Burgess would create an absurd result.
     *See McDaniels v. Carlson*, 108 Wn.2d 299, 306-07 (1987) (explaining that there are narrow exceptions
27   to the strict privity requirement for collateral estoppel, and such exceptions are dependant on the unique
28   facts of each case).

     MEMORANDUM ORDER

     PAGE - 8

standard.  *See Graham*, 490 U.S. at 395; *Smith v. City of Hemet*, 394 F. 3d 689, 700 (9th Cir. 2005); *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1992) (as amended).  That analysis requires balancing the "nature and quality of the intrusion" on a person's liberty with the "countervailing governmental interests at stake" to determine whether the use of force was objectively reasonable under the circumstances.  *Graham*, 490 U.S. at 396.

The Supreme Court further instructed that "the 'reasonableness' inquiry in an excessive force case is an objective one: The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them[.]"  *Id.* at 397 (citations omitted); *see, e.g.*, *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).  "The question is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable in light of *all* the relevant circumstances." *Hammer v. Gross*, 932 F.2d 842, 846 (9th Cir. 1991) (*en banc*) (emphasis in original).

In *Graham*, the Supreme Court stated that relevant factors in the Fourth Amendment reasonableness inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  However, the Court also noted that other factors may also be relevant to a court's inquiry.  "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," the reasonableness of a seizure must instead be assessed by carefully considering the objective facts and circumstances that confronted the arresting officers. *Id.*; *Hemet*, 394 F.3d at 701.  For example, the Ninth Circuit Court of Appeals has noted that, in some cases, the availability of alternative methods of capturing or subduing a suspect may be a factor to consider.  *See Chew v. Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994).

With this guidance, the Court now turns to defendants' motion for summary judgment in the instant case, also being mindful that if the evidence, reviewed in the light most favorable to plaintiff, could support a finding of excessive force, then defendants are not entitled to summary judgment.  Furthermore, "[b]ecause [the excessive force inquiry] nearly always requires a jury to

MEMORANDUM ORDER

sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit Court of Appeals] has held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (as amended) (explaining that the Court has "held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."). This is because such cases almost always turn on a jury's credibility determinations.

First, it is necessary to assess the quantum of force used to arrest plaintiff. As the Ninth Circuit Court of Appeals has explained, the three factors articulated in *Graham,* and other factors bearing on the reasonableness of a particular application of force, are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure. *Chew*, 27 F.3d at 1441. Here, plaintiff focuses on allegations on three "uses" of force during his arrest: (1) the pepper spray deployed into his vehicle; (2) allegedly deliberate efforts to increase the effect of the irritation to his eyes instead of alleviation of the pain; and (3) excessive physical contact to his head, back and face during his arrest. There is no dispute that defendants deployed pepper spray directly into plaintiff's vehicle until the can was empty. Further, while their description of their takedown tactics varies widely from plaintiff's description, defendants admit that once plaintiff exited his vehicle, he was forcefully controlled and handcuffed. Finally, there is no dispute that defendants poured water onto his head and face after he was handcuffed.[7]

To this assessment of force, the Court must apply the *Graham* criteria, starting with the "most important single element of the three specified factors: whether the suspect poses an immediate threat to the safety of the officers or others." *Chew*, 27 F.3d at 1441. In the instant case, there is nothing in the record indicating that plaintiff was armed or that he posed an immediate threat to anyone's safety. There is also evidence in the record that plaintiff was speaking calmly to the troopers, and that he was attempting to comply with their orders.

_____

[7] Again, the purpose and manner of that action are disputed.

MEMORANDUM ORDER

PAGE - 10

Further, plaintiff asserts that he was never informed that he was under arrest.  By the account of plaintiff's attorney, a telephonic witness to the arrest, plaintiff did not appear threatening, and did not threaten the troopers.  In light of these facts, a rational jury could easily find that plaintiff posed no immediate safety threat to anyone.

The second *Graham* factor that the Court considers is the severity of the crime at issue. *Graham*, 490 U.S. at 396.  As noted above, it has already been determined that there was no probable cause to arrest plaintiff for a suspected DUI.  In addition, at the time plaintiff was pulled over, Trooper Burgess had simply observed plaintiff speeding and allegedly driving recklessly.  Thus, the nature of the crime provides little, if any, basis for the troopers' use of physical force.

The third *Graham* factor is whether the individual actively resisted arrest or attempted to evade arrest by flight.  *Id.*   On this record, there is no indication that plaintiff attempted to flee the scene.  Although he did apparently refuse to step out of his vehicle when commanded to do so by the troopers, he never indicated that he was going to leave the scene, and there is nothing in the record indicating that he attempted to get away from the troopers once he did exit the vehicle.  In light of these facts, a rational jury could very well find that plaintiff was not attempting to flee from the scene.

Beyond these three *Graham* factors, the Court may also consider the availability of alternative methods of capturing or subduing a suspect.  *Hemet*, 394 F.3d at 703; *Chew*, 27 F.3d at 1441 n.5.  Here, it has been determined that there was no probable cause to arrest plaintiff for DUI, and therefore, there is a genuine issue of material fact as to whether there was any reason to capture or subdue plaintiff at all.  Similarly, the Court may also consider the absence of any warning when considering whether the force used was objectively reasonable.  *Deorle*, 272 F.3d at 1283.  In the instant case, plaintiff asserts that was not warned before Trooper Burgess deployed his pepper spray.

Accordingly, the Court finds that the question of whether the force used in this case was reasonable raises numerous issues of material fact that must be resolved by a jury.  Therefore,

MEMORANDUM ORDER

PAGE - 11

1    summary judgment on this issue is not appropriate.

2        **D.  Qualified Immunity from § 1983 Claims**

3        Having determined that plaintiff's § 1983 claims for unlawful seizure and excessive force

4    during arrest will not be dismissed on summary judgment, the Court now turns to defendants'

5    qualified immunity argument.  Defendants argue that, even if the Court finds they violated

6    plaintiff's constitutional rights under the Fourth Amendment, they are protected by qualified

7    immunity because they reasonably believed that their actions were lawful in light of the clearly

8    established law and information they possessed at the time.  As further explained below, the

9    Court disagrees.

10        Qualified immunity shields government officials, acting within one of their discretionary

11    functions, from civil liability as long as their conduct "does not violate clearly established

12    constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

13    457 U.S. 800, 818 (1982).  Once a government official raises the issue of qualified immunity,

14    "the plaintiff bears the burden of proving that the right allegedly violated was 'clearly

15    established' at the time of the occurrence at issue." *Davis v. Scherer*, 468 U.S. 183, *reh'g*

16    *denied*, 468 U.S. 1226 (1984).  To be considered "clearly established" for the purposes of

17    qualified immunity analysis, "the contours of the right must be sufficiently clear that a reasonable

18    official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483

19    U.S. 635, 640 (1987).  The Supreme Court has directed that the inquiry into whether or not a

20    claimed right was "clearly established" must focus upon the right not in a general, abstract sense,

21    but rather in a practical, "particularized" sense.  *See, id.* at 640.  Likewise, the Ninth Circuit

22    Court of Appeals has noted that "broad rights must be particularized before they are subjected

23    to the clearly established test," and the constitutional right referenced in *Harlow*, *supra*, "is not a

24    general constitutional guarantee . . . but its application in a particular context." *Kelley v. Borg*,

25    60 F.3d 664, 667 (9th Cir. 1995).

26        The determination of qualified immunity also necessitates an inquiry into whether a

27    reasonable officer could have believed his particular conduct at issue was lawful under the

28

MEMORANDUM ORDER

PAGE - 12

1   circumstances.  *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir. 1991).

2       In the instant case, the Court has declined to dismiss plaintiff's § 1983 claims.  None of

3   the parties dispute that at the time of plaintiff's detention and arrest, he had a clearly established

4   right to be free from unlawful seizure, and the right to be free from the use of unreasonable force

5   during any arrest.  However, as discussed above, there are unresolved factual issues at the heart

6   of plaintiff's claims.

7       Courts have struggled with the qualified immunity analysis on summary judgment when

8   there are issues of fact relevant to that analysis.  *See Sloman v. Tadlock*, 21 F.3d 1462, 1467-69

9   (9th Cir. 1994).  While the question of clearly established law is for the Court, it is the jury that

10  is "best suited to determine the reasonableness of an officer's conduct in light of the factual

11  context in which it takes place."  *Id.* at 1468.  The Court recognizes that the existence of a

12  factual dispute is, of itself, not a sufficient basis to deny summary judgment on a qualified

13  immunity claim.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  However, once the Court has

14  concluded that plaintiff's facts would establish a constitutional violation if proven true, and that

15  the right violated is clearly established, the objective reasonableness of the officer's conduct

16  must be determined in light of the facts of the case.  Those facts are yet to be determined by a

17  jury, and the final step of the qualified immunity analysis must await that determination.

18  Accordingly, as to plaintiff's § 1983 claims, the motion for summary judgment on qualified

19  immunity must be denied at this time.

20      **E.  Equal Protection Claim**

21      The Court next turns to plaintiff's equal protection claim.  Plaintiff alleges that the

22  actions by defendants were motivated by his race and color, and therefore deprived him of his

23  constitutional right to equal protection of the law as guaranteed by the Fourteenth Amendment

24  of the United States Constitution.  In order to make a *prima facie* case of discrimination in

25  violation of the Equal Protection Clause, a plaintiff must offer some evidence that "gives rise to

26  an inference of unlawful discrimination."  *Sischo-Nownejad v. Merced Community College*, 934

27  F.2d 1104, 1110 (9th Cir. 1991).  The basic premise of the Equal Protection Clause is that

28

MEMORANDUM ORDER

PAGE - 13

persons similarly situated have not been treated equally.  In this case, the Court agrees with defendants that plaintiff fails to demonstrate how defendants treated him differently from other persons in his situation.  Further, plaintiff has failed to produce any evidence that defendants' actions were racially motivated.  Accordingly, plaintiff's equal protection claim is DISMISSED.

### F.  Failure to Prevent a Civil Rights Violation

Plaintiff has also alleged that the actions by the troopers, and their failure to attempt to stop each others' actions, deprived him of his constitutional right to be free from false arrest and from the use of excessive force.  Thus, plaintiff asserts, defendants are liable for the failure to prevent a civil rights violation.  In one conclusory sentence, defendants have argued that plaintiff cannot show they violated his civil rights, and therefore, this claim must be dismissed.  As discussed above, the Court finds genuine issues of material fact as to whether plaintiff's rights were violated.  Accordingly, summary judgment on this claim is not appropriate.

### G. State Law Claims

Defendants have also moved for summary judgment on all of plaintiff's state law claims.  First, defendants argue that plaintiff's false arrest and false imprisonment claims are precluded because they had probable cause.  Defendants further argue that, even if they did not have probable cause, they are entitled to common law immunity.  The Court disagrees.  As discussed above, defendants had no probable cause to arrest plaintiff, and factual issues for the jury prevent this Court from determining whether the troopers acted reasonably.  Accordingly, summary judgment on this claim is not appropriate.

Defendants next argue that plaintiff cannot make a *prima facie* case of assault and battery.  As defendants note, the standard for common law assault and battery "is essentially the same as the fourth amendment analysis required under *Graham v. Connor*, *supra*."  *Dean v. City of Worcester*, 924 F.2d 364, 369 (1st Cir. 1991).  However, for the same reasons as discussed above, the Court finds that genuine issues of material fact have been raised as to the reasonableness of the troopers' actions.  Accordingly, summary judgment on this claim is not appropriate.

MEMORANDUM ORDER

PAGE - 14

1    Finally, defendants argue that plaintiff's claim for negligent infliction of emotional

2    distress should also be dismissed.  The Court notes that plaintiff has not raised such a claim.

3    Indeed, in the First Amended Complaint filed in this Court, plaintiff raises a claim for intentional

4    infliction of emotional distress.  (Dkt. #29 at 9).  Defendants have not addressed that claim, nor

5    have they otherwise moved for summary judgment on that claim.  Accordingly, the claim

6    remains to be resolved at trial.

7    **H.  Malicious Prosecution**

8    For the first time in his opposition to the instant motion, plaintiff asserts that he is

9    bringing a claim for malicious prosecution.  Defendants argue that plaintiff cannot assert this

10   new claim, as he has never given defendants notice of it, nor can he make out his *prima facie*

11   case.  The Court agrees with defendants.

12   There is no question that plaintiff's First Amended Complaint does not allege a claim for

13   malicious prosecution.  (*See* Dkt. #29).  Further, to the extent that plaintiff is moving to amend

14   pursuant to Federal Rule of Civil Procedure 15(b), that motion is denied.  The parties have not

15   consented expressly or impliedly to try this claim.  Accordingly, plaintiff is barred from bringing

16   a malicious prosecution claim in this action.

17   **III. CONCLUSION**

18   Having reviewed defendants' motion for summary judgment, plaintiff's opposition,

19   defendants' reply, the declarations and evidence in support of those briefs, and the remainder of

20   the record, the Court hereby ORDERS:

21   (1)  Defendants' motion for summary judgment (Dkt. #59) is GRANTED IN PART and

22   DENIED IN PART as set forth above.

23   (2)  The Clerk shall forward a copy of this Memorandum Order to all counsel of record.

24   DATED this 7th day of June, 2007.

25

26                                          RICARDO S. MARTINEZ
                                            UNITED STATES DISTRICT JUDGE
27

28

MEMORANDUM ORDER

PAGE - 15